# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

JILL NEWMAN,                                           Case No. 1:15-cv-639

        Plaintiff,                                 Dlott, J.
                                                       Bowman, M.J.

   v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## REPORT AND RECOMMENDATION

Plaintiff Jill Newman filed this Social Security appeal in order to challenge the Defendant's findings that she is not disabled.  *See* 42 U.S.C. §405(g).  Proceeding through counsel, Plaintiff presents four claims of error, all of which the Defendant disputes.  For the reasons explained below, I conclude that the ALJ's finding of non-disability should be AFFIRMED, because it is supported by substantial evidence in the administrative record.

## I.    Summary of Administrative Record

On August 30, 2012, Plaintiff filed an application for supplemental security income (SSI), alleging she became disabled on October 22, 1996. (Tr. 194-99). The agency denied her claim initially and upon reconsideration. (Tr. 90-134). After Plaintiff's claims were denied initially and upon reconsideration, she requested a hearing *de novo* before an Administrative Law Judge. ("ALJ").  On June 12, 2014, ALJ Peter Boylan held an evidentiary hearing at which Plaintiff appeared with counsel.   The ALJ heard testimony from Plaintiff and an impartial vocational expert. (Tr. 43-87).  On July 2, 2014,

the ALJ denied Plaintiff's applications in a written decision.  (Tr. 21-37).  Plaintiff now seeks judicial review of the denial of her application for benefits.

Plaintiff was born in 1955 and was 57 years old at time of her application.  (Tr. 35).  She completed high school and had no past relevant work.  She alleges disability due to fibromyalgia, headaches, anxiety, post-traumatic stress disorder, depression, osteoarthritis and neck and back pain.

Based upon the record and testimony presented at the hearing, the ALJ found that Plaintiff had the following severe impairments: "osteoarthritis, an affective disorder, and an anxiety disorder." (Tr. 23-25).   The ALJ concluded that none of Plaintiff's impairments alone or in combination met or medically equaled a listed impairment in 20 C.F.R. Part 404, Subp. P, Appendix 1.  The ALJ determined that Plaintiff retains the following residual functional capacity ("RFC") to perform medium work with the following limitations:

> She can frequently climb ramps or stairs.  She is limited to no more than occasional climbing of ladders, ropes, and scaffolds.  She must avoid concentrated exposure to fumes, odors, dusts, gases, and poor ventilation.  She is limited to simple, routine, and repetitive tasks.  She is unable to perform at a production-rate pace, such as generally associated jobs like assembly line worker, but she can perform goal-oriented work, such as generally associated with jobs like office cleaner.  She is limited to simple work related decisions.  She is limited to occasional interaction with supervisors, coworkers, and the public, with all such interaction on a superficial basis.  She is limited to tolerating occasional changes in a routine work setting.

(Tr. 32).  Based upon the record as a whole including testimony from the vocational expert, and given Plaintiff's age, education, work experience, and RFC, the ALJ concluded that Plaintiff could perform jobs including hand packer, laminating machine operator/feeder, and a rug inspector. (Tr. 35-36).  Accordingly, the ALJ determined that

Plaintiff is not under disability, as defined in the Social Security Regulations, and is not entitled to SSI.  *Id.*

The Appeals Council denied Plaintiff's request for review.  Therefore, the ALJ's decision stands as the Defendant's final determination.  On appeal to this Court, Plaintiff argues that the ALJ erred by: 1) improperly weighing the opinion evidence; 2) failing to find that fibromyalgia was a severe impairment; 3) improperly evaluating her credibility; and 4) failing to pose a valid hypothetical to the vocational expert. Upon close analysis, I conclude that the ALJ's decision should be affirmed.

## II.  Analysis

### A.  Judicial Standard of Review

To be eligible for SSI or DIB a claimant must be under a "disability" within the definition of the Social Security Act.  *See* 42 U.S.C. §§423(a), (d), 1382c(a).  The definition of the term "disability" is essentially the same for both DIB and SSI.  *See Bowen v. City of New York*, 476 U.S. 467, 469-70 (1986).  Narrowed to its statutory meaning, a "disability" includes only physical or mental impairments that are both "medically determinable" and severe enough to prevent the applicant from (1) performing his or her past job and (2) engaging in "substantial gainful activity" that is available in the regional or national economies.  *See Bowen*, 476 U.S. at 469-70 (1986).

When a court is asked to review the Commissioner's denial of benefits, the court's first inquiry is to determine whether the ALJ's non-disability finding is supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (additional citation and internal

quotation omitted). In conducting this review, the court should consider the record as a whole. *Hephner v. Mathews*, 574 F.2d 359, 362 (6th Cir. 1978). If substantial evidence supports the ALJ's denial of benefits, then that finding must be affirmed, even if substantial evidence also exists in the record to support a finding of disability. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994). As the Sixth Circuit has explained:

> The Secretary's findings are not subject to reversal merely because substantial evidence exists in the record to support a different conclusion . . . . The substantial evidence standard presupposes that there is a 'zone of choice' within which the Secretary may proceed without interference from the courts. If the Secretary's decision is supported by substantial evidence, a reviewing court must affirm.

*Id.* (citations omitted).

In considering an application for disability benefits, the Social Security Agency is guided by the following sequential benefits analysis: at Step 1, the Commissioner asks if the claimant is still performing substantial gainful activity; at Step 2, the Commissioner determines if one or more of the claimant's impairments are "severe;" at Step 3, the Commissioner analyzes whether the claimant's impairments, singly or in combination, meet or equal a Listing in the Listing of Impairments; at Step 4, the Commissioner determines whether or not the claimant can still perform his or her past relevant work; and finally, at Step 5, if it is established that claimant can no longer perform his or her past relevant work, the burden of proof shifts to the agency to determine whether a significant number of other jobs which the claimant can perform exist in the national economy. *See Combs v. Commissioner of Soc. Sec.*, 459 F.3d 640, 643 (6th Cir. 2006); 20 C.F.R. §§404.1520, 416.920.

A plaintiff bears the ultimate burden to prove by sufficient evidence that he or she is entitled to disability benefits. 20 C.F.R. § 404.1512(a). Thus, a plaintiff seeking

4

benefits must present sufficient evidence to show that, during the relevant time period, he or she suffered an impairment, or combination of impairments, expected to last at least twelve months, that left him or her unable to perform any job in the national economy.  42 U.S.C. § 423(d)(1)(A).

**B.  Specific Errors**

*A.  Evaluation of the Opinion Evidence*

Plaintiff argues that the ALJ erred by failing to give controlling weight to the opinion of her treating physician, Dr. Phillip Roberts.  Plaintiff's contention lacks merit.

In evaluating the opinion evidence the ALJ must consider the factors set forth in 20 C.F.R. § 404.1527(d)(2). These factors include: '(1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) the supportability of the opinion, with respect to relevant evidence such as medical signs and laboratory findings; (4) the consistency of the opinion with the record as a whole; (5) the specialization of the physician rendering the opinion; and (6) any other factor raised by the applicant.' *Meece v. Barnhart,* 192 Fed. Appx. 456, 461 (6th Cir.2006) (citing 20 C.F.R. §§ 404.1527(d)(2)-(d)(6)).

It is well established that the '[t]he ALJ 'must' give a treating source opinion controlling weight if the treating source opinion is 'well-supported by medically acceptable clinical and laboratory diagnostic techniques' and is 'not inconsistent with the other substantial evidence in [the] case record.'' *Blakley v. Commissioner of Social Sec.,* 581 F.3d 399, 406 (6th Cir.2009) (quoting *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004)). A finding by the ALJ that a treating physician's opinion is not consistent with the other substantial evidence in the case record 'means only that the opinion is not

5

entitled to 'controlling weight,' *not that the opinion should be rejected.*' Soc. Sec. Rul. 96–2p, 1996 WL 374188, at *4 (emphasis added). 'Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 C.F.R. § 404.1527 and 416.927.' *Blakley,* 581 F.3d at 408. These factors include the length, nature and extent of the treatment relationship and the frequency of examination. 20 C.F.R. § 404.1527(d)(2)(i)(ii); 416.927(d)(2)(i)(ii); *Wilson,* 378 F.3d at 544. In addition, the ALJ must consider the medical specialty of the source, how well-supported by evidence the opinion is, how consistent the opinion is with the record as a whole, and other factors which tend to support or contradict the opinion. 20 C.F.R. §§ 404.1527(d)(3)-(6), 416.927(d)(3)-(6); *Wilson v. Commissioner,* 378 F.3d 541, 544 (6th Cir.2004). Thus, the treating physician rule 'requires the ALJ to generally give greater deference to the opinions of treating physicians than to the opinions of non-treating physicians.' *See Blakley v. Com'f Social Security,* 581 F.3d 399, 406 (6th Cir.2009).

Here, in formulating Plaintiff's RFC, the ALJ gave significant weight to the state agency reviewing physicians' assessment of Plaintiff's physical abilities. (Tr. 32). Dr. Mikalov reviewed the record evidence in December 2012 and concluded Plaintiff could perform a range of medium work. (Tr. 97-99). Dr. Klyop reviewed the record evidence in January 2013 and also concluded that Plaintiff could perform a range of medium work. (Tr. 112-14). The ALJ explained that he gave significant weight to these assessments because they were generally consistent with the weight of the evidence, including Plaintiff's own statements denying pain or other symptoms in her treatment record, the rather mild findings on her medical imaging, the unremarkable nature of clinical findings in the treatment record, the mostly normal findings from Dr. Swedberg's consultative

examination, the conservative course of care, and reports regarding Plaintiff's activity level. (Tr. 32).

The ALJ assigned "little weight" to Plaintiff's treating providers, Dr. Roberts and Jennifer Combs, CNP. The ALJ noted that in May 2014, Dr. Roberts and Ms. Combs completed a "Medical Source Statement of Ability to do Work-Related Activities (Physical)" pre-printed form, wherein they indicated, via checkmarks on the form, that Plaintiff had such extreme physical functional limitations that she could not perform full-time work. (Tr. 666-71). In rejecting these extreme limitations, the ALJ noted that Dr. Roberts' and Ms. Combs' opinions regarding Plaintiff's physical limitations were based almost entirely on the report of a functional capacity evaluation performed by an occupation therapist, Robert Hammond, who was not an acceptable medical source (Tr. 33). *See* 20 C.F.R. § 416.913(a), (d).

The ALJ also recognized that Mr. Hammond's reported findings were vastly different from every other clinical examination in the record. (Tr. 33). In this regard, the ALJ noted that Ms. Combs examined Plaintiff ten days prior to Mr. Hammond's evaluation and found Plaintiff had no difficulties with standing or walking. (Tr. 33, 645-49). Further, as the ALJ noted, Mr. Hammond himself explicitly and repeatedly noted that Plaintiff exhibited inconsistent pain behaviors and submaximal effort. (Tr. 33-34, 672-75). The ALJ properly discounted Dr. Roberts' assessment based on these reasons. *See* 20 C.F.R. §§ 404.1527(c)(4), 416.927(c)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."). *See Cutlip v. Sec'y of HHS,* 25 F.3d 284, 287 (6th Cir.1994) (treating

physician opinions are "only accorded great weight when they are supported by sufficient clinical findings and are consistent with the evidence").

Notably, the record includes Plaintiff's own statements denying pain or other symptoms, mild findings on medical imaging, the unremarkable nature of clinical findings in the treatment record, the mostly normal findings from Dr. Swedberg's consultative examination, the conservative course of care, and reports regarding Plaintiff's activity level. (Tr. 32). More specifically and as noted by the ALJ, treatment notes revealed that Plaintiff has managed her conditions with conservative care. Namely, treatment notes from Plaintiff's primary care providers indicate that they have primarily managed Plaintiff's complaints of pain with NSAIDS with a few instances of short prescriptions for low-level narcotic pain medications. The record further indicates that Plaintiff has not pursued or been referred for pain management or referrals to other specialists. (Tr. 29).

In light of the foregoing, the undersigned finds no error in the ALJ's determination that Dr. Roberts' opinions concerning Plaintiff's limitations were not entitled to controlling weight.

### B. Step two-analysis

Plaintiff complains that the ALJ erred at Step 2 of the sequential analysis when he failed to find her fibromyalgia to be "severe." For an impairment to be "severe," it must be expected to last more than 12 months and more than "minimally" affect a claimant's work ability. *See* 42 U.S.C. § 423(d)(1)(A); *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988) ("an impairment can be considered not severe only if it is a slight

abnormality that minimally affects work ability regardless of age, education, and experience").

The ALJ noted that Plaintiff also alleged that she suffered from fibromyalgia, however, he determined that the evidence of record does not support a finding that this is a medically determinable impairment. (Tr. 23). Although Plaintiff reported that she had been diagnosed with fibromyalgia 15 years ago, there was no evidence to substantiate her report. *Id.* The ALJ specifically considered Social Security Ruling (SSR) 12-2p, and explained that Plaintiff's providers' treatment notes did not document that they conducted testing to exclude other potential causes of Plaintiff's complaints, as required by SSR 12-2p. Indeed, Plaintiff concedes that there was no record of 11 of 18 trigger points as required by SSR 12-2p.[1] The ALJ's decision is substantially supported in this regard.

Errors at Step 2 of the sequential analysis will not necessarily require reversal, if the ALJ finds at least one "severe" impairment and therefore continues with the remaining steps in the sequential process. That is because in determining a plaintiff's

---

[1] July 25, 2012, the Social Security Administration published SSR 12-2p in order to provide additional guidance in the evaluation of FM. *Id.*, 2012 WL 3104869. SSR 12-2p states that "we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity." *Id.* at *2 (emphasis added). It is only the type of "objective evidence" that may vary. Evidence from the treating physician must document "a physical exam" as well as medical history, and treatment notes must reflect "whether the person's symptoms have improved, worsened, or remained stable over time, and establish the physician's assessment over time of the person's physical strength and functional abilities." *Id.* To support the FM diagnosis, the evidence should include a record of a physician's digital palpation of tender points, testing to rule out other disorders, or (if 11 of 18 tender points are not documented), repeated manifestations of at least six FM symptoms or co-occurring conditions, "especially ...fatigue, cognitive or memory problems..., waking unrefreshed, depression, anxiety disorder, or irritable bowel syndrome." *Id.* at *3 (internal footnotes omitted).

residual functional capacity and ability to work later in the sequential process, the ALJ must consider even the impairments found not to be "severe" at Step 2. *See Maziarz v. Secretary of Health and Human Servs.,* 837 F.2d 240, 244 (6th Cir.1987); 20 C.F.R. § 404.1520. Thus, regulations require an ALJ to "consider the limiting effects of all [the claimant's] impairment(s), even those that are not severe, in determining [the claimant's] residual functional capacity. Pain or other symptoms may cause a limitation of function beyond that which can be determined on the basis of the anatomical, physiological or psychological abnormalities considered alone ...."  20 C.F.R. § 404.1545(e).

In this case, the ALJ found several "severe" impairments, including osteoarthritis, an affective disorder, and an anxiety disorder and therefore proceeded through the five-step sequential analysis. Even if there was an error, then, the ALJ's failure to consider Plaintiff's fibromyalgia as "severe" at Step 2 of the sequential analysis will not necessarily require reversal or remand. Contrary to Plaintiff's claim, the ALJ also reasonably considered her impairments in combination. As stated above, the ALJ found that Plaintiff had several severe impairments. (Tr. 23). He also discussed her alleged fibromyalgia, as well as several other alleged impairments, and explained his finding that they were not medically determinable or severe impairments. (Tr. 23-25).

Accordingly, the undersigned finds that the ALJ adequately considered all of Plaintiff's conditions in determining her RFC and therefore did not err at step-two of the sequential evaluation.

### C. Credibility Assessment

Plaintiff argues next that the ALJ erred in his credibility assessment.  Plaintiff assertion lacks merit.  The regulations provide that the RFC is the most a claimant can

still do despite his or her physical and mental limitations. See 20 C.F.R. § 404.1545(a). At the hearing level, the ALJ has the responsibility of assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). The ALJ assesses the claimant's RFC assessment by evaluating all the relevant evidence, including the medical evidence and the claimant's statements concerning his abilities and limitations. See 20 C.F.R. § 404.1545(a)(3). It is the ALJ's obligation to assess the claimant's RFC based upon the record in its entirety, and it is the ALJ's duty as the factfinder to resolve conflicts in the evidence. See SSR 96–5p, 1996 WL 374183, at *5 (1996); 20 C.F.R. §§ 404.1546, 404.1527(c).

It is the province of the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant. *Rogers v. Comm'r of Social Sec.,* 486 F.3d 234, 247 (6th Cir.2007) (citations omitted). In light of the Commissioner's opportunity to observe the individual's demeanor, the Commissioner's credibility finding is entitled to deference and should not be discarded lightly. *Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir.2001). In evaluating complaints of disabling pain, the fact-finder will first examine "whether there is objective medical evidence" that "confirms the severity of the alleged pain" or "can reasonably be expected to produce the alleged disabling pain." *Walters v. Comm'r of Social Sec.,* 127 F.3d 525, 531 (6th Cir.1997). "[I]f disabling severity cannot be shown by objective medical evidence alone, the Commissioner will also consider other factors, such as daily activities and the type and dosage of medication taken." *Id.* (citing 20 C.F.R. § 404.1529(c)(3)).

The ALJ's articulation of reasons for crediting or rejecting a claimant's testimony must be explicit and "is absolutely essential for meaningful appellate review." *Hurst v.*

11

*Sec. of HHS,* 753 F.2d 517, 519 (6th Cir.1985). In this regard, Social Security Ruling 96–7p explains:

> In determining the credibility of the individual's statements, the adjudicator must consider the entire case record, including the objective medical evidence, the individual's own statements about symptoms, statements and other information provided by treating or examining physicians or psychologists and other persons about the symptoms and how they affect the individual, and any other relevant evidence in the case record. An individual's statements about the intensity and persistence of pain or other symptoms or about the effect the symptoms have on his or her ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.

*4 SSR 96–7p.

In addition, the ALJ's decision "must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." *Id.* The ALJ's credibility decision must also include consideration of the following factors: 1) the individual's daily activities; 2) the location, duration, frequency, and intensity of the individual's pain or other symptoms; 3) factors that precipitate and aggravate the symptoms; 4) the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; 5) treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; 6) any measures other than treatment the individual uses or has used to relieve pain or other symptoms (e.g., lying flat on his or her back, standing for 15 to 20 minutes every hour, or sleeping on a board); and 7) any other factors concerning the individual's functional limitations and restrictions due to pain or other symptoms. See 20 C.F.R. §§ 404.1529(c) and 416.929(c); SSR 96–7p.

While an ALJ may properly consider a Plaintiff's inconsistent statements and other inconsistencies in the record, the ALJ must also consider other factors listed in SSR 96–7p, and may not selectively reference a portion of the record which casts Plaintiff in a capable light to the exclusion of those portions of the record which do not. *See Howard v. Comm'r of Soc. Sec.,* 276 F.3d 235, 240–41 (6th Cir.2002). Further, a credibility determination cannot be disturbed "absent a compelling reason." *Smith v. Halter,* 307 F.3d 377, 379 (6th Cir.2001). Thus, it is proper for an ALJ to discount the claimant's testimony where there are contradictions among the medical records, her testimony, and other evidence. *Warner v. Comm'r of Soc. Sec.,* 375 F.3d at 392.

In finding Plaintiff to be less than fully credible, Plaintiff argues that the ALJ failed to apply the properly regulatory factors in evaluating her credibility. Namely, Plaintiff contends that the ALJ selectively reviewed the objective evidence and failed to consider a number of reports that support Plaintiff's complaints of pain. Plaintiff further argues that the ALJ failed to properly consider Plaintiff's daily activities in assessing the functional limitations associated with his pain.

Contrary to Plaintiff's contentions, the ALJ properly considered the requisite factors in making his credibility determination. The ALJ's credibility determination considered Plaintiff's subjective statements as to her symptoms and functional limitations, objective medical evidence; Plaintiff's activities of daily living; and the record medical opinions. (Tr. 27-35). Further, the ALJ explained, in detail, the inconsistencies between Plaintiff's subjective allegations and the record evidence. (Tr. 28-31).

Based on the foregoing, the undersigned finds that the ALJ's decision adequately sets forth the reasons for his credibility finding and shows he considered the required

factors in determining plaintiff's credibility. *See* 20 C.F.R. § 416.929(c). In light of the ALJ's opportunity to observe plaintiff's demeanor, the ALJ's credibility finding is entitled to deference and should not be discarded lightly. *Kirk v. HHS,* 667 F.2d 524, 538 (6th Cir. 1981). *See also Cruse v. Commissioner,* 502 F.3d 532, 542 (6th Cir.2007); *Walters v. Commissioner,* 127 F.3d 525, 531 (6th Cir.1997); *Gaffney v. Bowen,* 825 F.2d 98, 101 (6th Cir.1987). Accordingly, the Court finds substantial evidence supports the ALJ's credibility finding in this matter.

*D. Hypothetical Question.*

Plaintiff's final assignment of error alleges that the Plaintiff claims that the ALJ's hypothetical questions to the vocational expert did not adequately portray Plaintiff's impairments; and as such, the ALJ erred in relying on the VE's testimony.

The Sixth Circuit has repeatedly made clear that a hypothetical question need only reference plaintiff's credible limitations; unsubstantiated complaints are not to be included in the question. *See McKenzie v. Commissioner of Soc. Sec.,* No. 99–3400, 2000 WL 687680, at * 4 (6th Cir. May 19, 2000). Here, the ALJ selected hypothetical questions which accurately described Plaintiff's limitations and the extent of her ability to perform work as supported by the evidence.

In this case, the ALJ properly determined that Plaintiff's subjective complaints relating to the functional limitations associated with her impairments were not fully credible. Thus, the ALJ was not required to include limitations in her hypothetical question that were not supported or not credible. *See Casey v. Sec'y of Health & Human Servs.,* 987 F.2d 1230, 1235 (6th Cir.1993) ("It is well established that an ALJ may pose hypothetical questions to a vocational expert and is required to incorporate

14

only those limitations accepted as credible by the finder of fact."). The VE's testimony provided substantial evidence supporting the ALJ's finding that Plaintiff was not disabled because she could perform a significant number of jobs. (Tr. 616–20). *See Hall v. Bowen,* 837 F.2d 272, 273, 275–76 (6th Cir.1988) (1,350 jobs is a significant number of jobs in Dayton area and national economy).

### III. Conclusion and Recommendation

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendant's decision be found to be **SUPPORTED BY SUBSTANTIAL EVIDENCE**, and **AFFIRMED**, and that this case be **CLOSED.**

 *s/Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

15

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

JILL NEWMAN,                                                  Case No. 1:15-cv-639

        Plaintiff,                                           Dlott, J.
                                                              Bowman, M.J.

       v.

CAROLYN W. COLVIN,
COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

**NOTICE**

    Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** of the filing date of this R&R.  That period may be extended further by the Court on timely motion by either side for an extension of time.  All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections.  A party shall respond to an opponent's objections within **FOURTEEN (14) DAYS** after being served with a copy of those objections.  Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).

16